# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| OSAMA IBRAHIM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-4329 |
| | § | |
| CITY OF HOUSTON, TEXAS and | § | |
| STEPHEN L. WILLIAMS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff, Osama Ibrahim, filed this suit against the City of Houston, Texas, and Stephen L. Williams, Director of the City of Houston Department of Health and Human Services (HDHHS).   Ibrahim alleged discrimination on the basis of his national origin, religion, and race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., and 42 U.S.C. § 1983.  Ibrahim also alleged that the race discrimination violated 42 U.S.C. § 1981.  (Docket Entry No. 1).  The City and Williams moved to dismiss. (Docket Entry Nos. 9, 10).  Ibrahim responded, (Docket Entry No. 13), and moved to supplement his response, (Docket Entry No. 14).

Based on the pleadings, motion, and response, this court denies the defendants' motions to dismiss the Title VII claims against the City, the § 1981 claim against the City, and the § 1983 claims against the City and against Williams in his individual capacity.  The

reasons are explained in detail below.

## I.    Background

Osama Ibrahim began working as Bureau Chief of the Bureau of Epidemiology for the HDHHS on April 18, 2005.  (Docket Entry No. 1 at 4).  The HDHHS terminated his employment on June 2, 2006. (*Id.*).  Ibrahim was the only Bureau of Epidemiology employee with a doctorate of medicine, a masters degree in Public Health Practice and Public Health Management, and a Ph.D. in the Epidemiology of Infectious Disease.  (*Id.*).  He was also the only HDHHS epidemiologist to have received a faculty member title from the American College of Epidemiology.  (*Id.*).

Ibrahim is an Arab, a Muslim, and is of Egyptian origin.  (*Id.*).  He was the only Muslim and Middle Easterner working as a Bureau Chief during his employment with the HDHHS.  (*Id.* at 5).  Ibrahim alleges that he had a good or outstanding employment history during the fourteen months of his employment with the City.  (*Id.*).

The HDHHS is a department within the City of Houston. (*Id.* at 3).  Stephen Williams is Director of the HDHHS.  (*Id.*).  Ibrahim alleges that Williams, in his capacity as a City "department head" and "appointing authority," is the highest-level policymaker and decisionmaker within the HDHHS.  (*Id.*).

In his complaint, Ibrahim states that Williams became aware of his national origin and religion after he was hired.  (*Id.* at 5).  Ibrahim alleges that Dr. Raouf Arafat, his direct supervisor and an Assistant Director in the HDHHS, repeatedly told Ibrahim that Williams

did not want him in the HDHHS because of his religion and national origin. (*Id.*). On May 31, 2006, Arafat allegedly informed Ibrahim that approximately three months earlier, Williams had stated that he wanted Ibrahim fired because he is a Muslim and Middle Eastern. (*Id.*).

On June 2, 2006, Williams terminated Ibrahim's employment, giving no reason for his decision. (*Id.* at 6). Ibrahim alleges that the termination of his employment and Williams's statements to Arafat were the product of race, religious, and national origin discrimination. (*Id.*). Ibrahim claims that the City and Williams knew that these actions were unlawful; that no public official in William's position could have reasonably or objectively believed these actions to be lawful; that Williams knew or should have known that it was unlawful to discriminate against employees based on race, religion, and national origin; and that Williams acted willfully, deliberately, and in callous disregard for Ibrahim's constitutional rights. (*Id.* at 7–8).

Ibrahim timely filed a complaint with the Equal Employment Opportunity Commission (EEOC) and received a Notice of Right to Sue on September 26, 2007. (Docket Entry No. 13, Ex. A). He filed this suit against the City and Williams on December 14, 2007. (Docket Entry No. 1). Ibrahim received a Notice of Right to Sue from the Department of Justice on March 7, 2008. (Docket Entry No. 14, Ex. A).

In this suit, Ibrahim claims national origin, religious, and race discrimination in violation of Title VII against the City, (Docket Entry No. 1 at 8–11), and in violation of 42

U.S.C. § 1983 against the City and Williams, (*id.* at 12–13).   He claims race discrimination in violation of 42 U.S.C. § 1981 against the City. (*Id.* at 10–11).  Ibrahim has withdrawn his § 1981 claim against Williams. (Docket Entry No. 13).  Ibrahim seeks actual and punitive damages, (Docket Entry No. 1 at 15), conceding that punitive damages are available only under § 1983 against Williams in his individual capacity, (Docket Entry No. 13 at 11).

The City and Williams have moved to dismiss.  The grounds for dismissal, and Ibrahim's response, are analyzed below.

## II.     The Legal Standard for a Motion to Dismiss

The Supreme Court recently clarified the standards that apply to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007), the Court stated that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *Sonnier v. State Farm Mut. Auto. Ins. Co.*, __ F.3d __, No. 07-30098, 2007 WL 4260892, at *1 (5th Cir. Dec. 6, 2007) (quoting *Twombly*, 127 S. Ct. at 1974).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d

397, 401 (5th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1964–65); *see also Sonnier*, 2007 WL 4260892, at *1 (quoting *Twombly*, 127 S. Ct. at 1965).   "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 127 S. Ct. at 1966) (internal quotations omitted).

## III.   The Title VII and § 1981 Claims against the City

Ibrahim alleges that he was fired because of discrimination based on his Middle Eastern and Egyptian national origin and race and his Muslim religion.  (Docket Entry No. 1 at 8–11).  The City moves to dismiss the Title VII and § 1981 claims against it for failure to exhaust administrative remedies and failure to state a claim.  (Docket Entry No. 9 at 2–3, 5–6).

### A.     Failure to Exhaust Administrative Remedies

Ibrahim filed an EEOC charge on June 1, 2006.  (Docket Entry No. 13, Ex. B).  He requested a Notice of Right to Sue letter on September 24, 2007.  (*Id.*).  The EEOC issued a Notice of Right to Sue letter on September 26, 2007.  (*Id.*, Ex. A).  Ibrahim sued the City and Williams on December 14, 2007.  (Docket Entry No. 1).  The EEOC sent Ibrahim's Request for Notice of Right to Sue to the Department of Justice on February 14, 2008.  (Docket Entry No. 13, Ex. B).   The Department of Justice issued a Notice of Right to Sue on March 7, 2008.  (Docket Entry No. 14, Ex. A).

5

The City asserts that Ibrahim failed to exhaust his administrative remedies by filing suit against the City, a governmental entity, before obtaining a Notice of Right to Sue from the Department of Justice.  (Docket Entry No. 9 at 2–3).  Ibrahim responds that the Notice of Right to Sue issued by the Department of Justice on March 7, 2008 cures the EEOC's failure to refer his discrimination charge to the Department of Justice.  (Docket Entry No. 14 at 1).

Title 42 U.S.C. § 2000e-5(f)(1) states:

> In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General . . . . [I]f within one hundred and eighty days from the filing of such charge . . . the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision . . . the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent . . . .

42 U.S.C. § 2000e-5(f)(1) (1991).

"[T]he EEOC's failure to follow its own regulations . . . should not redound to [the plaintiff's] detriment" by precluding a Title VII action.  *White v. Dallas Indep. Sch. Dist.*, 581 F.2d 556, 562 (5th Cir. 1978).  In determining whether a plaintiff can state a claim under Title VII, "the fact that the wrong agency issued the initial right to sue letter is not dispositive."  *Clanton v. Orleans Parish Sch. Bd.*, 649 F.2d 1084, 1094 n.13 (5th Cir. 1981).

6

In *Clanton*, the plaintiffs received a Notice of Right to Sue from the EEOC and filed suit before obtaining such a notice from the Department of Justice.  *Id.*  The court held that the "subsequent issuance of proper right to sue letters cured any defect that existed with respect to the original right to sue letter."  *Id.*

The Fifth Circuit has held that "the receipt of a right-to-sue letter is a condition precedent, which on proper occasion may be equitably modified."  *Pinkard v. Pullman-Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1218–19 (5th Cir. 1982) ("[T]he receipt of a right-to-sue letter subsequent to the commencement of a Title VII action, but while the action remains pending, satisfies the precondition that a plaintiff obtain statutory notice of the right to sue before filing a civil action under Title VII").  In *Pinkard*, two plaintiffs filed suit before receiving right-to-sue letters from the EEOC.  *Id.* at 1215.  The plaintiffs received these letters four months before the trial was scheduled and before they filed the pretrial order.  *Id.*  The court reversed the district court's dismissal of the plaintiffs' suit, holding that their receipt of right-to-sue letters "prior to dismissal of their Title VII claims cured their failure to initially satisfy the condition precedent."  *Id.*

District courts "have repeatedly held that '[e]xhaustion of administrative remedies is a statutory condition precedent to maintaining a Title VII action in district court, not a jurisdictional prerequisite.'"  *Buyze v. Mukasey*, No. 3:07-CV-1191, 2008 WL 904718, at *3 (N.D. Tex. Mar. 31, 2008)  (quoting *Gates v. City of Dallas, Texas*, No. 3:96-CV-2198, 1997 WL 405144, at *1 (N.D. Tex. July 15, 1997)); *see also Lee v. Kroger Co.*, 901 F. Supp. 1218,

7

1224 (S.D. Tex. 1995).  A plaintiff can survive a motion to dismiss "by obtaining a right-to-sue letter at any time before the suit is dismissed." *Sawyer v. JRL Enters., Inc.*, No. 05-1685, 2005 WL 3543738, at *2 (E.D. La. Oct. 5, 2005).

In this case, the EEOC issued a Notice of Right to Sue letter to Ibrahim on September 26, 2007.  (Docket Entry No. 13, Ex. A).  Ibrahim filed suit on December 14, 2007.  (Docket Entry No. 1).  The record shows that the EEOC did not refer Ibrahim's charge against the City to the Department of Justice, as required by 42 U.S.C. § 2000e-5(f)(1), until February 14, 2008.  (Docket Entry No. 13, Exs. A, B).  The Department of Justice issued a Notice of Right to Sue on March 7, 2008, informing Ibrahim of his right to institute a Title VII action against the City within ninety days.  (Docket Entry No. 14., Ex. A).  The EEOC's failure to refer Ibrahim's charge against the City does not preclude his Title VII suit against the City. *See White*, 581 F.2d at 562.  The Department of Justice issued its Notice of Right to Sue while Ibrahim's action was pending, curing the defect that existed when he filed suit.  *See Pinkard*, 678 F.2d at 1218–19; *Clanton*, 649 F.2d at 1094 n.13; *Sawyer*, 2005 WL 3543738, at *2.  The motion to dismiss Ibrahim's Title VII claim against the City based on a failure to exhaust administrative remedies is denied.

### B.    Race Discrimination

The City asserts that Ibrahim has failed to allege facts supporting a *prima facie* case of race discrimination under Title VII and § 1981.  (Docket Entry No. 9 at 5).  The City argues that Ibrahim has not stated his race and has not mentioned his race as a factor in his

termination.  (*Id.* at 5–6).  Ibrahim argues that he has alleged sufficient facts to state a claim of race discrimination, and that claims for race and national origin discrimination are closely related.  (Docket Entry No. 13 at 10–11).

Under Title VII, "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a).  Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).

Discrimination claims under Title VII and § 1981 are evaluated under the same framework.  *Hall v. Continental Airlines, Inc.*, No. 07-20237, 2007 WL 3151885, at *3 (5th Cir. Oct. 26, 2007).  For a plaintiff suing on the basis of job termination, the elements of  a *prima facie* case are "that he is a member of a protected class, he was qualified for the position that he held before being fired, he was fired or suffered other adverse employment action, and that similarly situated individuals outside of his protected class were treated more favorably."  *Id.; see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  The Supreme Court has held that "a complaint in an employment discrimination lawsuit [need not] contain specific facts establishing a prima facie case of discrimination."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).  A complaint "instead must contain only 'a short and plain statement of the claim showing that

the pleader is entitled to relief' to survive a motion to dismiss.  *Id.* (quoting  Fed. Rule Civ. Proc. 8(a)(2)).  "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Id.* at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "[T]he prima facie case operates as a flexible evidentiary standard" that "should not be transposed into a rigid pleading standard for discrimination cases."  *Id.*  (cited in *Twombly*, 127 S. Ct. at 1973).

Although the Supreme Court introduced new language to describe pleading requirements under Rule 8 in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Court did not overrule the *Swierkiewicz* holding that a heightened pleading requirement is impermissible in Title VII cases.  *See Twombly*, 127 S. Ct. at 1973.  Nor did the Court overrule the portion of *Conley v. Gibson* quoted in *Swierkiewicz*.  "[T]he cases have been universal in the aftermath of *Bell Atlantic* in not requiring that a plaintiff plead *prima facie* facts in the employment discrimination context."  *Ollie v. Plano Indep. Sch. Dist.*, No. 4:06-CV-069, 2008 WL 783562, at *2 (E.D. Tex. Mar. 20, 2008)  ("[T]o the extent that *Bell Atlantic* does change the pleading requirements in the federal courts, that change does not impose a requirement on employment discrimination plaintiffs to plead facts related to each of the *prima facie* elements used in the *McDonnell Douglas* framework. . . .  It would also be folly to suppose that a unanimous Supreme Court precedent of such recent vintage has been reduced to a mere artifact in the absence of a clear holding to that effect"); *see also Harvey v. M.L Smith, Jr., Inc.*, No. 07-1379, 2008 WL 2282178, at *2–3 & n.1 (W.D.La.

10

Apr. 29, 2008) (denying motion to dismiss hostile work environment and retaliation claims when the complaint stated the plaintiff's race, described the conduct underlying his claim, identified the employees responsible for the conduct, and alleged that he was engaged in a protected activity and treated differently than similarly situated employees).  Ibrahim's complaint is not deficient for the reasons the City asserts.

Nor is Ibrahim's complaint flawed because he fails adequately to allege race as well as national origin as the basis of the discrimination he asserts.  The Fifth Circuit has held that "[t]he line between national origin discrimination and racial discrimination is an extremely difficult one to trace.  An attempt to make such a demarcation before both parties have had an opportunity to offer evidence at trial is inappropriate." *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634–35 (5th Cir. 1981).  "[R]ace and national origin discrimination may present identical factual issues when a victim is 'born in a nation whose primary stock is one's own ethnic group.'"  *Sinai v. New England Tel. and Tel. Co.*, 3 F.3d 471, 475 (1st Cir. 1993) (quoting *Saint Francis Coll. V. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring)).

In his complaint, Ibrahim states that he is "an Arab Muslim of Middle Eastern (Egyptian) origin" and that he was the only Muslim and Middle Eastern Bureau Chief in the HDHHS.  (Docket Entry No. 1 at 4–5).  He alleges that Williams made statements about terminating him because of his religion and national origin.  (*Id.* at 5).  Ibrahim claims that he was terminated because of his religion (Muslim), his national origin (Middle Eastern), and

his race.  (*Id*. at 6).   Ibrahim does not need to specify his race to state a claim of race discrimination.  *See Bullard*, 640 F.2d at 634–35; *Sinai*, 3 F.3d at 475.  His statements give the defendants fair notice of his claim under Title VII and § 1981.  Ibrahim has pleaded sufficient facts to state a plausible claim for relief.  *See Swierkiewicz*, 534 U.S. at 508; *Harvey*, 2008 WL 2282178, at *2–3 & n.1; *Ollie*, 2008 WL 783562, at *2.  The motion to dismiss Ibrahim's Title VII and § 1981 race discrimination claims against the City is denied.

## IV.   The § 1983 Claims against the City

In moving to dismiss Ibrahim's claims under 42 U.S.C. § 1983 for national origin, religious, and race discrimination, the City asserts that Ibrahim has not identified an unconstitutional policy or custom and has not pleaded a causal link between the alleged violation and a City policy or policymaker.  (Docket Entry No. 9 at 3–4).  Ibrahim responds that he has identified an unconstitutional policy or custom of discrimination and has alleged that it caused his termination.  (Docket Entry No. 13 at 9–10).

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1996).

"Holding a municipality or a municipal official acting in his official capacity liable

12

under § 1983 requires a finding of a municipal custom or policy." *Lee v. Morial*, No. 01-30875, 2002 WL 971519, at *4 (5th Cir. Apr. 26, 2002); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "The official policy or custom must inflict the plaintiff's injury." *Lee*, 2002 WL 971519, at *4; *Monell*, 436 U.S. at 694. "To show an unconstitutional policy or custom, the plaintiff must (1) identify the policy or custom, (2) connect the policy or custom with the government entity, and (3) show that the policy caused the plaintiff's particular injury." *Lee*, 2002 WL 971519, at *4; *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc).

The Fifth Circuit has defined official policy as "a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority." *Lee*, 2002 WL 971519, at *4 (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)). Although "a single decision to take unlawful action" can establish official policy, "municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); see also *Lee*, 2002 WL 971519, at *4. There is no heightened pleading standard for claims against municipalities and government employees sued in their official capacity under § 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 167–68 (1993);

13

*Lee*, 2002 WL 971519, at *4

Ibrahim's complaint states that Williams, as Director of the HDHHS, is the Department's highest-level policymaker and decisionmaker. (Docket Entry No. 1 at 3). Ibrahim alleges that Williams "used his position to implement and carry out a custom, policy and procedure of discrimination on the basis of religion, national origin and race." (*Id.* at 13). Ibrahim further alleges that this policy of discrimination caused his termination. (*Id.* at 5–6, 12). Ibrahim has identified an unconstitutional policy of discrimination and has alleged that this policy caused his termination. He has connected the policy with the City by identifying an official with decisionmaking authority who allegedly adopted and followed the policy. *See Pembaur*, 475 U.S. at 483; *Lee*, 2002 WL 971519, at *4. Ibrahim has stated a claim against the City under § 1983. The motion to dismiss the § 1983 claim against the City is denied.

## V.     The Claims against Williams in his Individual Capacity

In his original complaint, Ibrahim asserts a claim against Williams in his individual capacity under § 1981 and § 1983. (Docket Entry No. 1 at 10–13). Ibrahim has withdrawn the § 1981 claim against Williams. (Docket Entry No. 13). The defendants move to dismiss the § 1983 claim against him in his individual capacity. (Docket Entry No. 9 at 3–4).

A plaintiff states a § 1983 claim against a governmental official in his individual capacity by "alleg[ing] specific conduct giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). Although the defendants have moved to dismiss

14

Ibrahim's § 1983 claims, they have not provided support for their motion to dismiss the § 1983 claim against Williams in his individual capacity. Williams asserted the affirmative defense of qualified or legislative immunity in his answer but did not move to dismiss on this basis. The motion to dismiss the § 1983 claim against Williams is denied.

Ibrahim also seeks punitive damages. (Docket Entry No. 1 at 15). The City asserts that Ibrahim's punitive damages claims should be dismissed because municipalities are not liable for punitive damages under § 1981, § 1983, or Title VII. (Docket Entry No. 9 at 4–5). Ibrahim concedes that punitive damages are available to him only under § 1983 against Williams in his individual capacity. (Docket Entry No. 13 at 11–12). Punitive damages are recoverable "against a state official acting in an individual capacity pursuant to a § 1983 claim." *Givs v. City of Eunice*, No. 6:05-CV-0788, 2006 WL 1831528, at *2 (W.D. La. June 29, 2006). Punitive damages are available to Ibrahim under § 1983 against Williams in his individual capacity

## VI.    Conclusion

This court denies the defendants' motion to dismiss the Title VII claims against the City, the § 1981 claim against the City, and the § 1983 claims against the City and against Williams in his individual capacity.

SIGNED on July 29, 2008, at Houston, Texas.

_____

Lee H. Rosenthal

United States District Judge

15